## Baskett v. Hall.

(Decided October 29, 1920.)

### Appeal from Henderson Circuit Court.

Sales—Objection to Quality of Corn Upon Delivery—Recovery of Difference in Value.—Where one sells to another corn of an agreed quality at an agreed price and the purchaser upon delivery objects to the quality when the seller agreed for another to represent him in the settlement of the dispute concerning the quality and such one acted and agreed upon terms which are subsequently performed by the purchaser, plaintiff can not recover for the difference between the original contract price and that fixed in accordance with the terms agreed to by plaintiff's agent.

VANCE & HEILBRONNER for appellant.

YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellee and plaintiff below, James R. Hall, sold his 1917 crop of corn to the appellant and defendant below, Lee Baskett, who contracted in his own name, but who in reality was acting as agent for a Louisville firm. The price which defendant agreed to pay for the corn was $1.65 per bushel. Plaintiff delivered in cars under the contract 1,220 bushels of his crop and some days thereafter defendant paid him $1,708.34; leaving a balance due on the 1,220 bushels, at the agreed price, of $304.66, and plaintiff filed this suit to recover that sum and in addition the sum of $121.35, alleged damages for the failure of plaintiff to receive and pay for the balance of plaintiff's crop at the price agreed upon. Upon trial there was a verdict in favor of plaintiff for the $304.66, upon which judgment was rendered, and complaining of it defendant has filed a transcript of the record in this court accompanied with a motion for an appeal. At the time of the contract of purchase, which was made by telephone, defendant had not seen the corn and he claims that it was represented by plaintiff to be good, merchantable corn and suitable for seed corn. Plaintiff agreed substantially with defendant's version of the contract in this respect except he says that he made no statement as to the corn being suitable for seed, but he admitted that he represented it to be good, merchantable corn. Plaintiff began delivering the corn on a day when

defendant was absent and it was received by a Mr. Harding whom defendant had especially employed for that purpose, and who discovered, according to his testimony, that the quality of corn was not according to the contract as represented to him, since it was neither merchantable nor seed corn and was inferior in quality and very much damaged. The special agent informed plaintiff's drivers who hauled the corn to the cars and instructed them to notify Mr. Hall as to its condition, and that night he notified plaintiff who had returned home and the latter talked to Mr. Hall, or to his wife, over the telephone about the corn and made complaint about its inferior quality and damaged condition and plaintiff testified concerning this telephone conversation that "I told her (his wife) to tell him (defendant) if it was necessary and he needed anybody to take my place, to call on his brother Tom," who seemed to be a man of such sterling integrity that plaintiff was willing to risk him in adjusting the matter and what should be done concerning it, notwithstanding he was the brother of the defendant. He was further asked "What did your wife report to you that the message was over the 'phone?" and defendant answered, "That Mr. Baskett wasn't entirely satisfied with the corn and wanted to know what to do, or something to that extent; and I told her to tell him, if it was necessary, if he had to have any help in the matter to call on his brother, Tom Baskett, to act for me." Tom Baskett was selected to represent plaintiff pursuant to the telephone directions and he immediately examined the corn and reported to plaintiff its condition. His testimony on this point was:

"I went to Mr. Hall's house to see him about the corn one day. He was sick in bed. I told him about the corn. He didn't hardly know what to do about it. He said he was sick. I says 'Mr. Hall, that corn is in a worse shape than you think it is.' I says 'Outside it looks pretty well, but inside it is damaged considerably.' He asked me what I would do with it, if it was mine. I stated if it was mine I would send it to Louisville and let that man set a price on it. He said: 'You do with it like it was yours.'"

Plaintiff admitted the substance of Tom Baskett's testimony, as above quoted, when he testified that:

"Mr. Tom (Baskett) came to see me; he said the corn didn't suit Mr. Baskett (defendant) altogether, and the best plan would be to let him receive my crop of corn; send it to Mr. Ewing at Louisville, the man who received corn; if there was any damage to the corn, that I would

be docked for he would do the fair thing by me. I told him I would leave it with him.''

He further testified: ''He (Tom Baskett) says: 'I won't bother you much; you are not well.' He says: 'My advice to you about the corn would be to let Lee (defendant) receive the corn, and if there is any damaged corn docked, leave it to Mr. Ewing.' He says: 'He will do the fair, square thing by you.' ''

It is uncontradicted that after that conversation plaintiff delivered enough of his corn to fill the two available cars, which was 1,220 bushels altogether, and that it was shipped to plaintiff's principal in Louisville, a. Mr. Ewing, who agreed to and did send defendant a check therefor at the rate of $1.40 per bushel, which check was immediately endorsed and delivered to plaintiff, who afterwards sold the remainder of his corn to another without offering to deliver it to defendant. It is proven without contradiction that the price paid by Ewing was the market price for corn of that quality at the time, and we think there can be no doubt from the testimony that plaintiff's corn was considerably damaged at the time he delivered the 1,220 bushels to defendant. This is shown by plaintiff's servants who hauled it, by defendant and his brother, Tom Baskett, and by plaintiff's agent, Mr. Harding. All of these witnesses say that the corn appeared to be sound on the outside of the ear but when broken at least half, if not more, of the ears were damaged next to the cob which rendered it of an inferior quality and not such as plaintiff represented it to be.

It is not necessary that we hold that the testimony was sufficient to conclusively sustain defendant's contention as to the quality of the corn (although we might say there is but little doubt concerning this) since the testimony does establish that defendant in good faith objected to its quality, and to settle the controversy concerning it plaintiff agreed that he would abide by whatever Tom Baskett did in the matter. The latter, after his conversation with plaintiff as above shown, reported to his brother, the defendant, and the suggestions with reference to shipping the corn to Mr. Ewing at Louisville were carried out. That plaintiff fully agreed to the above method of settling the dispute concerning the quality of corn is further shown by his testimony when he said, ''Along about a couple of weeks (after the delivery of the corn) I called up Mr. Baskett to see if he had gotten returns; he said no, but that he would call up that day and

find out and let me know." Manifestly if the original contract for a sale of the corn to defendant at $1.65 per bushel had not in some way been modified there would have been no necessity in waiting for "returns," since defendant was obligated by the contract to pay for the amount of the corn he received immediately upon delivery at the price agreed upon. Under this view of the case there should have been a directed verdict in favor of defendant. None was asked, however, but instruction 1-a, offered by defendant's counsel, is tantamount to a peremptory instruction under the facts in this case. It in substance told the jury to find for defendant if it believed from the evidence that he objected to the corn on account of its quality and the parties afterwards agreed to ship it to defendant's principal at Louisville and for plaintiff to accept whatever price the Louisville firm would place upon it, provided defendant had paid to plaintiff that price. We say that instruction was tantamount to a peremptory one because all the facts therein submitted were undisputed.

The terms of the settlement agreed to by Tom Baskett, plaintiff's acknowledged agent who was selected for that purpose, having been fully executed there remains no other obligation to be performed by defendant, and the motion for the appeal is sustained and the judgment is reversed with directions to sustain the motion for a new trial and to set aside the judgment and for other proceedings not inconsistent with this opinion.